UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CYNTHIA MONTEIRO ELIAS,        )
                                         )
               Plaintiff,        )
                                         )
               v.                  )            C.A. No. 13-11602-JLT
                                       )
MARIO ELIAS, ET Al.,            )
                                       )
            Defendants.    )

MEMORANDUM AND ORDER

TAURO, J.

BACKGROUND

On July 3, 2013, plaintiff Cynthia Montiero Elias ("Cynthia"), a resident of Milton, Massachusetts, filed a self-prepared document entitled "Motion to Restrict Son J. Elias From Leaving U.S. x 2 weeks effective today 7/4/13" (Docket No. 1) (first name of child omitted by the Court and hereinafter referred to as "J"). The pleading is not entirely coherent or organized. From what can be discerned, Cynthia contends that her (estranged) husband Mario Elias ("Mario") is not a United States citizen, but he has custody of their son, J, a United States citizen. She alleges "economic crimes" had led to her loss of custody of J, but does not specify the nature of those crimes. Id. at 1. She claims that the Probate and Family Court issued an order that Mario must seek permission before leaving the country; however, Mario plans to leave for Cape Verde on July 5, 2013. She claims that if Mario left, that would constitute a violation of the Court Order "after the fact." Id.

Cynthia seeks an injunction or an emergency restraining order to allow time for the United States Attorney's Office and the FBI to investigate complex economic crimes that she claims has caused injury to her and to J in a protracted custody battle. Attached to the motion was a copy of a "Request for Inquiry" (Docket No. 1 at 6) in which it appears that on July 3,

2013, Cynthia alleged obstruction of justice in the Norfolk County Probate and Family Court. She also alleged wire and mail fraud by the Milton Police, the Department of Child and Families in Weymouth, the Norfolk County Probate and Family Court, and the Norfolk District Attorney ("DA").  Further, she claims that Mario committed perjury under oath.   As an additional matter, Cynthia claims that she has been to the DA, the Milton Police, the Court, back to the DA and the State Police, to no avail.  She asserts criminal activity because the "missing and exploitive children's bureau filed a report related to this family under heading of internet pornography."  Id. at 7.

Next, Cynthia alleges that false restraining orders were taken out of the Milton Police Station, that she was entrapped by false allegations in order to "criminalize mother" so that she would be unlawfully incarcerated.  She contends these actions constituted hate crimes based on race, gender, perception of mental illness, and religious discrimination.  Id.  She further alleges that the Norfolk County Probate and Family Court had pre-arranged and "rigged" the custody battle, along with various attorneys and others, who, in conjunction with judges, manipulated her case.  Id.  She also believes that Mario had "made deals" in order to have his sexual assault charges dismissed.  Id.

Also attached to the motion was a copy of a pleading entitled "Findings and Rulings" from the Norfolk County District Court Department, Quincy Division.  That document indicates that in February, 2013, Mario appeared in that Court to appeal the denial of his request for criminal complaints to issue against Cynthia.  Mario's appeal was denied after hearing, on the ground that there was no right to appeal the clerk magistrate's denial of his application for a criminal complaint.  Additionally, based on the merits, the Quincy District Court declined to issue any criminal complaints against Cynthia.  The Court noted that Mario had brought his

concerns to the Milton Police, but officers declined to apply for a criminal complaint against

Cynthia.  Moreover, the concerns were also brought to the attention of the Norfolk County

Probate Court where Mario and Cynthia had been litigating a very contentious divorce and child

custody battle.  Further, the Norfolk County Probate and Family Court, in response to Mario's

concerns, modified Cynthia's rights to visitation several times, including a time in November,

2012, when it required Cynthia to be placed on GPS monitoring if she wished to resume

visitation with J.  Finally, the Quincy District Court found the matter was best left to the Norfolk

County Probate and Family Court.

In the civil cover sheet attached to her motion, Cynthia listed as defendants Mario,

Norfolk County, and the Town of Milton.  She stated her causes of action to be economic crimes,

hate crimes, racial, gender and religious discrimination, and retaliation.  Along with her motion,

Cynthia filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2).

Thereafter, on July 8, 2013, Cynthia filed a Motion to Amend the Complaint (Docket No.

6) seeking to add defendants Department of Child and Families, Value Options, Bournewood

Hospital, Milton Hospital, Harvard Vanguard Medical Associations, Association Family

Conciliation of Court, and Justice Harms.  Cynthia seeks to add these defendants claiming this to

be a complex case involving fraud, deception, and "persuasion of plaintiff's son's well-being

through ritual abuse trauma."   Motion to Amend Complaint (Docket No. 6 at 1).

Additionally, Cynthia filed a Motion for an Evidentiary Hearing (Docket No. 5) seeking

to move forward with her case for malfeasance, fraud, deception, civil rights violations by police

officers, hate crimes, religious discrimination, and discrimination based on the perception of

mental illness.  Id.  She again alleges that the defendants pre-arranged in advance that Mario

would win custody of J, so that he could "get out" of his sexual assault charges and to harass her

in retaliation for exercising her First Amendment rights in advocating for her son's educational well-being. She seeks permission to present information and also to expand the number of defendants.[1]

DISCUSSION

I.      The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Cynthia's financial disclosures indicating that she has no substantial assets or income, this Court finds that she lacks funds to pay the $400.00 filing and administrative fees for this action.

Accordingly, plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) will be <u>ALLOWED</u>.

II.     The Motion to Amend Complaint

As an initial matter, Cynthia started this case by filing a motion seeking emergency injunctive relief in the form of an Order restraining Mario from leaving the country with J. She has not filed a "Complaint" in accordance with Rule 3 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court"). Nevertheless, for purposes of this Memorandum and Order, this Court will construe Cynthia's emergency motion also as her original Complaint. In light of this, Cynthia's Motion to Amend Complaint is permitted once as of right pursuant to Rule 15(a)(1) since no responsive pleading had been filed.

Accordingly, Cynthia's Motion to Amend (Docket No. 6) will be <u>ALLOWED</u> as of right. To clarify, this Court will consider both the motion (Docket No. 1) and the Motion to Amend

---

[1]Additionally, Cynthia filed as exhibits a binder containing numerous Milton Police Reports, as well as various medical and mental health records (original) and probate court pleadings.

(Docket No. 6) together as constituting the Amended Complaint, which shall be the operative pleading at this time, for purposes of preliminary screening.

III.     This Action is Subject to Preliminary Screening

Because Cynthia is proceeding *in forma pauperis*, her Amended Complaint (Docket Nos. 1 and 6) is subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Further, in addition to the statutory screening requirements under § 1915, the Court has an independent obligation to inquire, *sua sponte,* into its subject matter jurisdiction.[2] In connection with this preliminary screening, Cynthia's *pro se* pleadings are construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

Even under a broad reading, however, this action is subject to dismissal for the reasons set forth below.

IV.     Failure to Comply With Fed. R. Civ. P. 8

Cynthia's Amended Complaint (Docket Nos. 1 and 6) fails to set forth any plausible

---

[2]See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); Fed. R. Civ. P. 12(h)(3) ("If the court determines ... it lacks subject matter jurisdiction, the court must dismiss the action."). See also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

claims upon which relief may be granted in accordance with the pleading requirements of Rule 8

of the Federal Rules of Civil Procedure.  Rule 8(a) requires a plaintiff to include in the

complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice

of what the ... claim is and the grounds upon which it rests,'"  <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957));

<u>see</u> <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33 (1st Cir. 2005).  It must afford the defendant(s) a

"[']meaningful opportunity to mount a defense,'"  <u>Díaz-Rivera v. Rivera-Rodríguez</u>, 377 F.3d

119, 123 (1st Cir. 2004) (quoting <u>Rodríguez v. Doral Mort. Corp.</u>, 57 F.3d 1168, 1172 (1st Cir.

1995)).  <u>See</u> <u>also</u> <u>Redondo-Borges v. U.S. Dept. of Hous. and Urban Dev.</u>, 421 F.3d 1, 5 (1st Cir.

2005).  "In a civil rights action as in any other action . . . . , the complaint should at least set forth

minimal facts as to who did what to whom, when, where, and why."  <u>Educadores</u>

<u>Puertorriqueños en Acción v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004).

Here, Cynthia's sparse Amended Complaint, written in narrative form, does not set forth

the material underlying facts or outline the causes of action upon which liability is based.  She

alleges, in a general fashion, that an injustice is occurring with respect to her son, but states no

actionable legal theory for which liability may be found or for which the relief requested may be

awarded.  She fails to set forth the material who, what, when, where, and why information

necessary to state a plausible claim upon which relief may be granted.  Here allegations consist

of legal conclusions, without any factual underpinnings, and she fails to set forth the alleged

wrongdoings of each of the purported defendants.[3]

---

[3]By pleading in the manner she has – collectively asserting his claims against the Defendants –
Cynthia fails to meet the pleading requirements for proceeding in this Court.  <u>See</u> <u>Bagheri v.</u>

In light of this, Cynthia's case is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

V.      Failure to Allege There is an Inadequate State Remedy

Cynthia does not provide any information as to whether she has exhausted her state trial and/or appellate avenues.  Thus, to the extent that she asserts violations of her constitutional due process rights, she has not shown that she has an inadequate state remedy to redress her grievances.  When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate postdeprivation remedy, there is no denial of due process.  See Hudson v. Palmer, 468 U.S. 517, 531-37 (1984); Parratt v. Taylor, 451 U.S. 527, 538-44 (1981); O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000).  See also Riordan v. Martin, 51 F.3d 264, 1995 WL 146215, *1 (1st Cir. 1995) (unpublished disposition stating that "[s]ince inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory.")(citing Gooley v.

_____

Galligan, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision, finding complaint deficient because, *inter alia*, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts).  See also Atuahene v. City of Hartford, 10 Fed. Appx. 33, *34, 2001 WL 604902, at *1 (2d Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard . . . .") .  Moreover, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments."  Terrance v. Cuyahoga Cnty., 2005 WL 2491531, at *1 (N.D. Ohio 2005) citing Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).  See McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979) (court is not required to "conjure up unpled allegations," notwithstanding duty to be less stringent with *pro se* complaints).  Such an exercise by the Court would "require . . . [the courts] to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'"  Terrance, 2005 WL 2491531, at *1 (quoting Beaudett, 775 F.2d at 1278).

Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).   In light of this, Cynthia's claims for denial

of custody by the Norfolk County Probate and Family Court because of fraud, discrimination, a

pre-arranged outcome, or any other misconduct of this ilk, must be dismissed.

VI.     Absolute Judicial Immunity Bars Claims Against Justice Harms

Cynthia's civil rights and/or tort claims against Justice Harms of the Norfolk County

Probate and Family Court are not cognizable because absolute judicial immunity protects judges

from acts performed within the scope of their jurisdiction.  Mireles v. Waco, 502 U.S. 9, 11

(1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from the ultimate

assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-54 (1967) (absolute judicial

immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (Mass. 1935)

(stating that is it "too well settled to require discussion, that every judge, whether of a higher or

lower court, is exempt from liability to an action for any judgment or decision rendered in the

exercise of jurisdiction vested in him by law").

The reason for recognizing this form of immunity is that:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint
> some of the most intense and ungovernable desires that people can have . . . .
> [T]his is the principal characteristic that adjudication has in common with
> legislation and with criminal prosecution, which are the two other areas in which
> absolute immunity has most generously been provided.  If judges were personally
> liable for erroneous decisions, the resulting avalanche of suits, most of them
> frivolous but vexatious, would provide powerful incentives for judges to avoid
> rendering decisions likely to provoke such suits.  The resulting timidity would be
> hard to detect or control, and it would manifestly detract from independent and
> impartial adjudication.

Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000) (quoting Forrester v. White,

484 U.S. 219, 226-27 (1988)).

In this case, Cynthia has not specified what actions or inactions form the basis of the

8

alleged liability; however, it is fair to assume that she is challenging rulings by Justice Harms

that relate to child custody, child travel, and/or child visitation issues.  Although Cynthia may

believe that Justice Harms erred in her rulings, there is no reasonable or credible allegation that

her actions or inactions were taken outside the scope of their jurisdiction.  Thus, even if Justice

Harms erred in her decisions, or acted negligently or maliciously, her conduct would not

constitute the type of extra-judicial activity exempting her from entitlement to absolute judicial

immunity.

        To the extent that Cynthia may believe this Court should disregard this doctrine entirely,

or believes that her due process or other constitutional claims trump the absolute judicial

immunity doctrine, such assertion has been rejected as unfounded and contrary to established

law.

VII.    <u>Sovereign Immunity of State Courts</u>

        It is not entirely clear whether Cynthia seeks to sue the Norfolk County Probate and

Family Court.  In any event, to the extent she seeks to do so, such claims would be barred

because the Commonwealth of Massachusetts and its courts (as instrumentalities of the State) are

not subject to suit in this Court, under the doctrine of sovereign immunity grounded in the

Eleventh Amendment.[4]  <u>See</u> <u>Alabama v. Pugh</u>, 438 U.S. 781, 781 (1978) (*per curiam*) (Eleventh

Amendment generally is recognized as a bar to suits against a State, its departments, and

_____

[4]The Eleventh Amendment to the United States Constitution provides that:

        The Judicial power of the United States shall not be construed to extend to any
        suit in law or equity, commenced or prosecuted against one of the United States
        by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

agencies unless the State has consented to suit); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (citing <u>Pugh</u>) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,... a State cannot be sued directly in its own name regardless of the relief sought"); <u>cf.</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of 42 U.S.C. § 1983); <u>Quern v. Jordan</u>, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983); <u>Brown v. Newberger</u>, 291 F.3d 89, 92 (1st Cir. 2002) (there has been no unequivocal abrogation of the Commonwealth's Eleventh Amendment immunity).  Here, there are no allegations which would denote a waiver of immunity by the Commonwealth of Massachusetts or its courts.

VIII.   <u>Jurisdictional Bars</u>

A.      <u>Lack of Federal Question or Diversity Jurisdiction</u>

Because Cynthia's Amended Complaint is replete with Rule 8 pleading deficiencies as discussed above, this Court is not satisfied that she has set forth any claims sufficient to invoke the subject matter jurisdiction of this Court.  In order to proceed with this action in federal court, she must demonstrate that there is either: (1) federal question jurisdiction; or (2) diversity jurisdiction.  <u>See</u> 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction).

1.      <u>No <i>Bona Fide</i> Federal Question Presented</u>

Federal district courts have original jurisdiction over "federal question" cases.  A federal question "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; <u>Viqueira v. First Bank</u>, 140 F.3d 12, 17 (1st Cir. 1998).  A claim arises under federal law within the meaning of § 1331 if a federal cause of action emerges from the face of a well-pleaded complaint.  <u>See</u> <u>City of Chic. v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 163 (1997).

The well-pleaded complaint rule generally restricts the exercise of federal question jurisdiction to instances in which a federal claim is made manifest within the four corners of a plaintiff's complaint.  <u>Viqueira</u>, 140 F.3d at 17.

In this case, Cynthia has couched her claims as based on  malfeasance, fraud, deception, civil rights violations by police officers, hate crimes, religious discrimination, and discrimination based on the perception of mental illness; however, these bald allegations do not raise federal questions.  To the extent that she complains of civil rights violations pursuant to 42 U.S.C. § 1983, she has not stated plausible claims against Mario or any other defendants except for the police officers and Justice Harms (as to whom judicial immunity applies), because she has not set forth any basis for state action by those defendants.[5]  Private actors cannot be held liable under § 1983.  In the absence of any *bona fide* federal claims, this Court would decline to exercise supplemental jurisdiction over Cynthia's state claims.[6]

---

[5]Section 1983 of Title 42 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law.  <u>See, e.g.</u>, <u>Baker v. McCollan</u>, 443 U.S. 137 (1979) (constitutional deprivations); <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980) (statutory deprivations).  "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'"  <u>Felton v. Lincoln</u>, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989)).  "It is well established that 'a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'"  <u>Wilson v. Moreau</u>, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (alteration in original) (quoting <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001)).

[6]Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction."  28 U.S.C. § 1367(c)); <u>see</u> <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>, 375 F.3d 99, 104-05 (1st Cir. 2004); <u>Rodriguez</u>, 57 F.3d at 1177 ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

2.      No Diversity Jurisdiction

Next, in addition to federal question jurisdiction, district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332(a).  Diversity must be complete: the citizenship of each plaintiff must be shown to be diverse from that of each defendant.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978).  Here, Cynthia has not provided any information regarding the diversity of citizenship of any of the defendants; nevertheless, it is presumed that at least one of the defendants is a citizen of Massachusetts, and thus there is not complete diversity.  Thus, her state law tort claims may not be brought in this Court unless there is also federal question jurisdiction.

B.      The Rooker-Feldman Doctrine

To the extent that Cynthia is, in legal effect, seeking federal review of any final decision of the Norfolk County Probate and Family Court (and this is not entirely clear from the pleadings), this Court lacks jurisdiction to conduct such review, pursuant to the Rooker-Feldman doctrine.

The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision.  See Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (stating that the Rooker-Feldman doctrine, "in broad terms, deprives the district court of subject matter jurisdiction over a final judgment of a state court"); Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (the doctrine

12

"bars parties who lost in state court from 'seeking review and rejection of that judgment' in

federal court.") (quoting <u>Exxon Mobile Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 291

(2005); <u>see also</u> <u>Maher v. GSI Lumonics, Inc.</u>, 433 F.3d 123, 126 (1st Cir. 2005) ("Under the

federal law of res judicata, a final judgment on the merits of an action precludes the parties from

relitigating claims that were raised or could have been raised in that action.") (quoting <u>Porn v.

Nat'l Grange Mut. Ins. Co.</u>, 93 F.3d 31, 34 (1st Cir. 1996).

     C.     <u>The Abstention Doctrine</u>

     Conversely, to the extent that Cynthia requests this Court interfere with any <u>pending</u> state

court litigation involving matters relating to her son (including the award of custody and

conditions of custody or visitation), this Court should abstain from judicial review of any

pending state case.  The federal courts have long recognized the "fundamental policy against

federal interference with state criminal proceedings."  <u>Younger v. Harris</u>, 401 U.S. 37, 46

(1971); <u>In re Justices of the Superior Court Dept. of the Mass. Trial Court</u>, 218 F.3d 11, 16 (1st

Cir. 2000).  <u>See also</u> <u>Haw. Housing Auth. v. Midkiff</u>, 467 U.S. 229, 237-38 (1984) (federal court

abstention from jurisdiction appropriate where "federal claims could have been or could be

presented in ongoing state judicial proceedings that concern important state interests").    The

<u>Younger</u> abstention doctrine has been applied to other non-criminal proceedings; however,

application of <u>Younger</u> is narrow.  In <u>Casiano-Montañez v. State Ins. Fund Corp.</u>,707 F.3d 124,

128 (1st Cir. 2013) the United States Court of Appeals for the First Circuit stated:

> [I]t is well settled that the pendency of an action in state court is not a *per se* bar
> to related federal court proceedings.  <u>Exxon Mobil Corp. v. Saudi Basic Indus.
> Corp.</u>, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  Indeed,
> federal courts have a "virtually unflagging obligation . . .  to exercise the
> jurisdiction given them."  <u>Colo. River Water Conservation Dist. v. United States</u>,
> 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).  This duty, however, is
> not absolute, and it yields in certain "exceptional circumstances, where denying a

federal forum would clearly serve an important countervailing interest."
Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d
1 (1996) (citation omitted) (internal quotation marks omitted).

Casiano-Montañez,707 F.3d at 128.  See Coors Brewing Co. v. Mendez-Torres, 678 F.3d 15, 23

(1st Cir. 2012) (listing types of cases warranting abstention).

Generally, a federal court must abstain from reaching the merits of a case over which it

has jurisdiction so long as there is: (1) an ongoing state judicial proceeding, instituted prior to the

federal proceeding (or, at least, instituted prior to any substantial progress in the federal

proceeding); that (2) implicates an important state interest; and (3) provides an adequate

opportunity for the plaintiff to raise the claims advanced in her federal lawsuit.  See Brooks v.

N.H. Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996) (citing Middlesex Cnty. Ethics Comm. v.

Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

Here, Cynthia's request for this Court to interfere with pending divorce and custody

proceedings in the Norfolk County Probate and Family Court presents the type of exceptional

circumstances that would implicate all three prongs of the test, warranting Younger abstention in

this case.[7]

D.    Domestic Relations Exception

Relatedly, to the extent that Cynthia is seeking to alter the parameters of Mario's custody

of J, including his plans to travel with J, this Court must abstain from interfering with the state

---

[7]While there are exceptions to Younger abstention which would allow a plaintiff to obtain relief
in the federal courts, even though doing so would interfere with ongoing state-initiated
proceedings, there is nothing presented here from which this Court could reasonably infer that
Cynthia's case falls in these categories.  See Bettencourt v. Bd. of Registration in Med., 904 F.2d
772, 779 (1st Cir. 1990) (citing Younger, 401 U.S. at 54).   General allegations of misconduct,
without specific factual allegations in support, are insufficient to invoke one of the exceptions to
the Younger doctrine.  See, e.g., Saunders v. Flanagan, 62 F. Supp. 2d 629, 634 (D. Conn. 1999).

probate case that involves domestic matters such as child custody, visitation, travel, or other related child issues, because of the domestic relations exception to jurisdiction.

The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children, because state courts have developed the proficiency and specialized resources necessary to handle such cases.  See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).  The Ankenbrandt Court held that "the domestic relations exception, as articulated by this Court . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."  Id. at 703.  See Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.").

Here, Cynthia's request for a restraining order to prevent Mario from taking their son out of the country falls within the domestic relations exception.  Were this Court to exercise jurisdiction, it would be required to investigate the needs of the child as well as Mario's current capabilities as the parental custodian for J.  The state probate and family court is in the best position to serve these family interests.

As an additional matter, the presence of family-related matters in this action argues strongly for the propriety of total abstention.  "The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity would still make abstention appropriate."  Mojica v. Nogueras-Cartagena, 573 F. Supp. 2d 520, 523 (D. P.R. 2008) (citing Armstrong v. Armstrong, 508 F.2d 348 (1st Cir. 1974)); see Sutter v. Pitts, 639 F.2d 842, 843 (1st Cir. 1981) ("[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims

15

that are closely related to, though not within, the jurisdictional exception."); see LaMontagne v.
LaMontagne, 394 F. Supp. 1159, 1169 (D. Mass. 1975) (holding that reasons of comity and
common sense made abstention appropriate where, although father of minor child sued mother,
probation officers and others alleging violation of Eighth and Fourteenth Amendment rights, the
action was essentially a domestic relations contest).

In sum, Cynthia may not pursue her child custody issues in this Court; rather, she must
pursue her child custody issues in the state courts – with the prospect of entering the federal
judicial system by petitioning for certiorari to the Supreme Court of the United States regarding
any federal issues once the state proceedings have been concluded – rather than by opening
second fronts in the lower federal courts when disappointed by ongoing state court proceedings.

IX.   Failure to Show Injunctive Relief is Warranted

As noted above, Cynthia seeks emergency injunctive relief to prohibit Mario from
leaving the United States with J.  She fails, however, to meet the requirements for preliminary
injunctive relief or a Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of
Civil Procedure.  To obtain the extraordinary remedy of preliminary injunctive relief, Cynthia
must show that: (1) she will suffer irreparable harm absent the injunction; (2) the injury
outweighs the harm to the defendant(s) if granted; (3) she is likely to succeed on the merits of
the case; and (4) the injunction does not adversely affect the public interest.  Voice of The Arab
World v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011); Planned Parenthood
League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981); see Weaver v. Henderson, 984
F.2d 11, 12 (1st. 1993); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68,
70 (D. Mass. 1993) (extending four part preliminary injunction test to temporary restraining
orders).  Likelihood of success on the merits is the critical element of the four-factor framework.

Weaver v. Henderson, 984 F.2d at 12.

Here, this Court will not construe Cynthia's Motion to Restrict Son J. Elias From Leaving U.S. x 2 weeks effective today 7/4/13 (Docket No. 1) as a request for a preliminary injunction because preliminary injunctions may not be issued without notice to the adverse party, and the motion does not appear to have been served on the defendants. See Fed. R. Civ. P. 65(a)(1).

To the extent Cynthia seeks an *ex parte* restraining order, such relief may be sought pursuant to Fed. R. Civ. P. 65(b).[8]  The same four-factor test for preliminary injunctions also has been extended to temporary restraining orders.  Levesque v. State of Me., 587 F.2d 78, 80 (1st Cir. 1976); see Butler v. Me. Sup. Jud. Ct., 758 F. Supp. 37, 38 (D. Me. 1991) (applying criteria).  A party seeking an *ex parte* temporary restraining order must allege that her injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion.  Fed. R. Civ. P. 65(b).  Further, the party's attorney (or the party himself, if proceeding *pro se* as here) must certify to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required.  Id.

As an initial matter, Cynthia failed to certify her efforts to give notice to the defendants

---

[8]Rule 65(b) (1) (A) and (B) states that:

> The court may issue a temporary restraining order without  written or oral notice to the adverse party or that party's attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts, made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A), (B).

in this action.  The failure to do so provides sufficient grounds for denial of the motion.  <u>See</u> <u>Thompson v. Ramirez</u>, 597 F. Supp. 726, 726 (D.P.R. 1984) (denying temporary restraining order, in part, where there had been no certification to court in writing, of the efforts, if any, of notification to adverse parties).

Additionally, Cynthia has not shown that any harm would be suffered should injunctive relief not be granted.  Although she has alleged that Mario plans to take J to Cape Verde in violation of the state court Order, and that he is not a United States citizen, she does not allege that Mario will be unable to return to the United States with J (either willfully or because immigration authorities would prohibit such return), nor does she allege that J would be harmed by the travel to Cape Verde.  Further, while she has alleged that Mario had planned to take J out of the country on July 5, Cynthia filed her additional motions and supporting materials on July 8, 2013, seeking to pursue her complaint.  Thus, it does not appear that Mario actually did take J out of the country.

In any event, for the reasons set forth above, this Court cannot find that Cynthia has shown a likelihood of success on the merits.  As a final consideration, Cynthia has not shown that she lacks an adequate remedy to obtain the identical relief sought here, in the state court. Indeed, notwithstanding her allegations of misconduct, there is no reason to believe that Cynthia could not seek an Order from the Norfolk County Probate and Family Court restraining travel outside the United States, and to obtain state appellate review of any adverse decision.

Accordingly, her Plaintiff's Motion to Restrict Son J. Elias From Leaving U.S. x 2 weeks effective today 7/4/13 (Docket No. 1) will be <u>DENIED</u>.

X.      <u>The Motion for an Evidentiary Hearing</u>

In light of the above, there is no good basis to conduct an evidentiary hearing in this

matter.  Accordingly, Cynthia's Motion for an Evidentiary Hearing will be <u>DENIED</u> (Docket

No. 5).  If and/or when this action is permitted to proceed further, the Court will decide whether

an evidentiary hearing is warranted.

XI.     <u>Order to Show Cause and File a Second Amended Complaint</u>

In light of the above, this action will be dismissed within thirty-five (35) days from the

date of this Memorandum and Order unless Cynthia demonstrates good cause in writing why her

claims should not be dismissed for the reasons stated herein.  The show-cause response shall not

reiterate the allegations contained in her pleadings, but must address specifically the legal

impediments discussed herein, including the Rule 8 pleading deficiencies, absolute judicial

immunity, sovereign immunity, lack of an inadequate state remedy, and lack of subject matter

jurisdiction under 28 U.S.C. §§ 1331 and 1332, the <u>Rooker-Feldman</u>, <u>Younger</u> abstention, and

the domestic relations exception to jurisdiction.  Any show-cause response shall not exceed

seven (7) pages.

Within that 35 day period, she also shall file a "Second Amended Complaint" that

comports with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  Any

Second Amended Complaint must set forth, in a coherent fashion, each cause of action (*i.e.*,

legal theory of liability) against each defendant separately and not jointly, along with a brief

statement of the underlying facts to support each claim (*i.e.,* the "who, what, when, where, and

why information").  The Second Amended Complaint will be screened pursuant to 28 U.S.C.

§ 1915(e)(2), and no summonses shall issue pending further Order of the Court.

Cynthia is advised that he will not be permitted to amend or supplement her pleadings *ad*

*seriatim*.  She has only this one opportunity to amend her Amended Complaint to comport with

the Rule 8 pleading requirements.  Failure to do so will result in dismissal of this action.

19

<u>CONCLUSION</u>

Based on the above, it is hereby Ordered that:

1.      Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u>;

2.      Plaintiff's Motion to Amend Complaint (Docket No. 6) is <u>ALLOWED</u> pursuant to Fed.
        R. Civ. P. 15(a)(1).   The Court construes the Amended Complaint as consisting of
        Docket Nos. 1 and 6;

3.      Plaintiff's  Motion to Restrict Son J. Elias From Leaving U.S. x 2 weeks effective today
        7/4/13 (Docket No. 1) is <u>DENIED</u>;

4.      Plaintiff's Motion for an Evidentiary Hearing (Docket No. 5) is <u>DENIED</u>;

5.      Within 35 days of the date of this Memorandum and Order, Plaintiff must demonstrate
        good cause why this action should not be dismissed for the reasons stated herein, and she
        shall file a Second Amended Complaint in accordance with the pleading requirements of
        Rule 8 of the Federal Rules of Civil Procedure, failing which, this action will be
        dismissed.


SO ORDERED.

                                              <u>/s/ Joseph L. Tauro</u>
                                              JOSEPH L. TAURO
                                              UNITED STATES DISTRICT JUDGE

DATED: July 15, 2013

20