UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA MONTEIRO ELIAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARIO ELIAS, ET Al., )<br>)<br>Defendants. ) | C.A. No. 13-11602-JLT |

MEMORANDUM AND ORDER

TAURO, J.

BACKGROUND

I.  Procedural Background

On July 3, 2013, plaintiff Cynthia Montiero Elias ("Cynthia") filed a self-prepared emergency motion for a Court Order enjoining her estranged husband, Mario Elias ("Mario"), from taking their minor son to Cape Verde. At that time, Mario had sole custody of their son; Cynthia had lost her parental rights and custody of their son during a protracted custody battle in the Norfolk County Probate and Family Court ("probate court"). Cynthia requested the injunction in order to allow time for the United States Attorney's Office and the FBI to investigate alleged complex economic crimes that she claims has caused her emotional distress.

In addition to her request to enjoin Mario, Cynthia asserted, *inter alia*, numerous allegations of obstruction of justice in the probate court, and wire and mail fraud by the Milton Police Department, the Department of Child and Families in Weymouth ("DCF"), the probate court, and the Norfolk County District Attorney's Office. Cynthia also alleged that false restraining orders were taken out by Mario from the Milton Police Station. She claims that she was entrapped by these false orders so that she would be unlawfully incarcerated. She further contended these actions constituted hate crimes based on race, gender, perception of mental

illness, and religious discrimination. Finally, she alleged that the probate court had pre-arranged and "rigged" the custody battle, and that various attorneys and others, in conjunction with judges, manipulated her custody case.

Thereafter, on July 8, 2013, Cynthia filed a Motion For an Evidentiary Hearing (Docket No. 5) and a Motion to Amend the Complaint (Docket No. 6) seeking to add defendants DCF, Value Options, Bournewood Hospital, Milton Hospital, Harvard Vanguard Medical Associations ("HVMA"), Association Family Conciliation of Court, and Justice Harms. Cynthia sought to add these parties as defendants claiming this to be a complex case involving fraud and deception.

On July 15, 2013, this Court issued a comprehensive Memorandum and Order (Docket No. 7) setting forth Cynthia's allegations in further detail. This Court noted that Cynthia had not filed a "Complaint" under Fed. R. Civ. P. 3; she had only filed a motion seeking emergency injunctive relief. Nevertheless, this Court construed her motion as her original Complaint, and therefore granted her Motion to Amend once as of right, pursuant to Fed. R. Civ. P. 15(a)(1). This Court then proceeded to preliminarily screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e) and found numerous legal impediments were presented in that pleading.

First, the Amended Complaint failed to comply with Fed. R. Civ. P. 8 requiring a her to set forth plausible claims upon which relief may be granted, because the narrative Amended Complaint did not set forth material underlying facts or outline her causes of action as to each defendant separately.

Second, this Court addressed the failure of Cynthia to allege that she did not have an adequate state remedy. She did not clearly state the status of the state custody proceedings, or whether she had exhausted her appellate avenues. In light of this, she had not stated a plausible § 1983 civil rights claim.

Third, this Court noted that Cynthia's claim against probate court Justice Harms were not cognizable because absolute judicial immunity protected him from liability for acts performed within the scope if his jurisdiction.

Fourth, this Court addressed the failure to state a plausible claims against the probate court itself because such claims were barred by Eleventh Amendment sovereign immunity.

Fifth, this Court extensively addressed the various jurisdictional impediments to Cynthia's claims pursuant to 28 U.S.C. §§ 1331 and 1332.  With respect to federal question jurisdiction pursuant § 1331, this Court noted that Cynthia's claims of malfeasance, fraud, deception, civil rights violations, hate crimes, religious discrimination and discrimination based on the perception that she was mentally ill, simply constituted all bald allegations that did not raise *bona fide* federal questions sufficient to invoke federal question jurisdiction.  This Court indicated that in the absence of subject matter jurisdiction, it would not exercise supplemental jurisdiction over any state law claims.

Next, with respect to diversity jurisdiction pursuant to § 1332, this Court noted that Cynthia had not provided any information regarding diversity of citizenship, but it reasonably was presumed that at least one defendant also was a citizen of Massachusetts, and thus there was not complete diversity to invoke diversity jurisdiction.

Finally, this Court also extensively addressed the various jurisdictional impediments raised by the Rooker-Feldman Doctrine,[1] the Younger Abstention Doctrine,[1] and the Domestic Relations Exception Doctrine.

---

[1] See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[1] See Younger v. Harris, 401 U.S. 37, 46 (1971)

In light of the noted impediments, this Court denied Cynthia's Motion for an Evidentiary Hearing as well as her motion for emergency injunctive relief. Given the legal impediments discussed in the Memorandum and Order, Cynthia was directed to demonstrate good cause why her case should not be dismissed for the reasons stated in the Memorandum and order. Additionally, she was directed to file a "Second Amended Complaint" in accordance with the pleading requirements of Rule 8.

On August 19, 2013, Cynthia filed a Motion for an Extension of Time to comply (Docket No. 9), which this Court later granted.

On October 1, 2013, Cynthia timely filed a "Motion to Amend Complaint to Title 18, Section 242, Deprivation of Rights Under Color of Law and Title 28 [sic] U.S.C. Section 241 Conspiracy Against Rights under Color of Law" (Docket No. 12). Attached to her pleading was a binder of exhibits in support.[2]

## II.   The Second Amended Complaint/Show Cause Response

In her recent Motion to Amend Complaint (incorporating both her Second Amended Complaint and her Show Cause Response), Cynthia modifies the original list of defendants, and now names as defendants: the Town of Milton (Tucker School, School Committee, and Police); HVMA, Mario, and DCF. Essentially, she reiterates most of the allegations in her prior pleadings; however, she adds additional underlying factual information to put her allegations in context, and alleges that there was a conspiracy by the defendants against her.

Specifically, she claims that on September 29, 2010, Mario appeared in the probate court

---

[2]These exhibits included, among other things, Boston Municipal Court ("BMC") criminal docket sheets with respect to charges against Mario; copies of pleadings and other documents in connection with the child custody case in the probate court; various letters to and from Cynthia; and the Report of the Guardian *Ad Litem*.

claiming that Cynthia suffered from bipolar disorder and needed to be on psychiatric medication. He claimed their son was anxious and missing school and filed for Separation and Custody. On October 5, 2010, Cynthia appeared in the probate court for a custody hearing, at which time she preliminarily lost both legal and physical custody of their son based on Mario's allegations of her mental illness, as well as his allegations that he was the victim of domestic violence. Cynthia claims, however, that it was Mario who was involved in a criminal trial at the BMC for assault and battery and indecent assault and battery, which ended in a guilty plea. She argued with the probate court that Mario's allegations were false and deceptive.

      This custody dispute occurred between October 5, 2010 to May 23, 2013. Cynthia claims that because of this custody battle, she has been unable to become gainfully employed, unable to enjoy the benefits of parenting her son, and has been forced to exhaust her 401K savings and her inheritance, and had to go into foreclosure. She argues that the probate court erroneously assumed that the reason for her distress was due to her bipolar disorder; however, she contends that her distress was due to the loss of parenting rights and the efforts she has made over the course of three years in order to disprove the allegations against her.

      Next, Cynthia challenges DCF reports concerning her parenting abilities. She alleges that in March, 2011, DCF sent its reports concerning the Elias family to the Court, pursuant to a Court Order. She disputed certain statements in the reports and made repeated attempts to have the "distortions, lies, and deceit in the DCF reports" corrected, to no avail. Sec. Am. Compl. (Docket No. 12 at 3, ¶ 10). Cynthia's later filings were "screened out" because it was determined that she "was not a reliable reporter and suffers from 'bipolar disorder.'" Id. at ¶ 12. She therefore contends that all subsequent DCF involvement was "'tainted by the previous report that Plaintiff could not appeal or grieve.'" Id. at ¶ 14.

Further, Cynthia argues that the custody litigation was politically motivated, retaliatory in nature, and designed only to humiliate and punish her for exercising First Amendment rights; however, she does not set forth any underlying facts to put this assertion into context.

With respect to claims against HVMA, Cynthia claims that a former therapist, Gail Carey, filed a 51A report against her in August 2010 without having seen Cynthia for months, based simply on telephone calls received from Mario and a relative, without Cynthia's knowledge.[3]  She contends that Ms. Carey failed to follow up with the DCF and clarify matters. Cynthia claimed that she did attempt to seek redress in the probate court against HVMA, alleging HVMA's actions raised serious ethical issues and resulted in adverse consequences to her and her son.

Next, Cynthia challenges the restraining and protective orders against her, as well as police conduct.  On February 20, 2011, in the middle of custody proceedings, Mario filed for an emergency restraining order against Cynthia, with the Milton Police Station.  Thereafter, the emergency restraining order was issued, but was removed by the Quincy District Court two days later.  Cynthia alleges that it is unclear who authorized the order in the first place, because a police officer indicated that Judge "Paul" Coffey granted it; however, the Quincy District Court records indicate that Judge "James" Coffey granted it.  She alleges that, because of this "mystery" she forwarded documents to the FBI, believing an investigation was warranted.

On February 23, 2011, Mario sought a Protective Order from the probate court.  As a result, Cynthia was barred from contact with her son.  Cynthia claims all subsequent police

---

[3]Under Massachusetts law, mandated reporters must immediately make an oral report to DCF, when, in their professional capacity, they have reasonable cause to believe that a child under the age of 18 years is suffering from abuse or neglect. See Mass. Gen. Laws Ch. 119, §51A.

reports directly resulted from the restrictions placed on her. She states that "when you add it all up that something is amiss in terms of Plaintiff's Constitutional rights under Title 18 U.S.C. Section 242 Deprivation of Rights Under Color of Law and Title 18, U.S.C. Section 241 Conspiracy against rights." Id. at 5, ¶ 25.

With respect to her claims against the Town of Milton's School Committee, Cynthia asserts that she attempted to discuss her son's education with the school, to no avail. She filed a civil rights complaint with the Civil Rights Board of Education; however, her complaint was summarily dismissed because Mario was the parent who had sole legal custody of their son, and Mario had refused to sign permission for the Board to investigate. A week later, Cynthia was arrested by Milton Police for violating the Protective Order.

Cynthia claims that she "intends to continue to find justice at the probate court regarding her loss of parental rights and custody matters; however, she requests that this Court exercise jurisdiction over her allegations. She also contends that she had filed numerous complaints with the Massachusetts Attorney General's Office alleging civil rights violations and fraud, but all her complaints were dismissed. She therefore believed that she had no choice but to file the instant lawsuit so that a law enforcement agency can investigate her claims.

Cynthia states that at some point after she filed her emergency motion in July, 2013, the probate court issued a Summary Judgment granting full legal and physical rights to Mario. She questions the rationale of this decision in light of the fact that she had had full custody of her son over the summer when Mario left the country for vacation, but upon his return, custody was restored back to him. She claims that the question she is posing does not concern the fact that she lost, but concerns the manner and process and deprivation of rights which resulted in her loss of custody.

She asks this Court for deference considering she is appearing *pro se*, and, as relief, she seeks an order certifying this case as class action, declaring the rights and liabilities of the parties, and an order for injunctive relief (unspecified). She also seeks compensatory and punitive damages.

Finally, Cynthia notes that she will dismiss this case if at any point Mario agrees to work out a satisfactory solution with all parties. She also seeks an inquiry and investigation as to why the Massachusetts Attorney General's Office failed to investigate her numerous civil rights complaints to that agency.

## DISCUSSION

I.    The Motion to (Second) Amend Complaint

Since this Court previously directed Cynthia to file a Second Amended Complaint, her Motion to Amend (Docket No. 12) will be ALLOWED. Nevertheless, for the reasons set forth below, this action will be dismissed.

II.    Declination to Certify Class

As an initial matter, in her request for relief, Cynthia asks this Court to certify the case as a class action. She fails to state the basis for a class action, or the class she seeks to represent, and no class action claims are discernible. Under Fed. R. Civ. P. 23, one or more individuals can be considered to be "named plaintiffs" representing all members of the class, while other parties are part of the class without being named in the lawsuit ("represent" under Rule 23 relates to the ability of the named plaintiff to speak for all members of the class; it does not mean "represent" in the sense of having a lawyer). A basic requirement for all class actions is that the named plaintiff "fairly and adequately" represent the other members of the class. Fed. R. Civ. P. 23(a)(4). This Court cannot find that plaintiff has that ability as a *pro se* litigant, in light of this

Memorandum and Order.

For all these reasons, this Court <u>DECLINES</u> to certify this case as a class action.

III.     <u>Failure to Demonstrate Good Cause as Directed</u>

This Court credits that Cynthia has made concerted efforts to comply with the directives contained in the Memorandum and Order (Docket No. 7). Nevertheless, she has failed to demonstrate sufficiently that there is good cause not to dismiss this action. In particular, Cynthia fails to address the Court's finding that she has an adequate state remedy to pursue her various claims stemming from the loss of custody and parental rights and/or the probate court's rulings considering or refusing to consider evidence presented.

Moreover, Cynthia has failed to address the jurisdictional bars presented by <u>Rooker-Feldman</u>, <u>Younger</u>, and the domestic relations exception. The fact that she is proceeding *pro se*, and that she feels the Massachusetts Court System is flawed and needs to be investigated, is not sufficient to invoke the Court's jurisdiction over this case. All of Cynthia's claims arise out of matters that are intimately connected with the state custody proceedings and therefore should not be brought in this Court, for the reasons previously set forth in the Memorandum and Order (Docket No. 7).

While Cynthia appears to claim that she is not contesting the loss of parental rights and custody, but rather the "process" by which she lost custody, the claim is essentially is a distinction without a difference. It is clear that underlying all of her claims is the perceived erroneous decision of the probate court stripping her of her parental rights.

Finally, Cynthia claims a final judgment entered in July, 2013. Thus, to the extent she seeks judicial review of matters occurring in state court, <u>Rooker-Feldman</u> bars her claims.

IV.     Failure to Comply With Fed. R. Civ. P. 8 and Rule 9(b); No Private Cause of Action Under 18 U.S.C. §§ 241 and 242

Even if this Court had jurisdiction over matters that did not directly fall under Rooker-Feldman, Younger, and/or the domestic relations exception, this action still must be dismissed because Cynthia's Second Amended Complaint also fails to plead plausible claims against each of the named defendants in accordance with Rules 8 and 9 of the Federal Rules of Civil Procedure, and fails to state plausible claims under 18 U.S.C. §§ 241 and 242.[4]

A.      No Civil Private Cause of Action Under Criminal Statues

It is well settled that criminal statutes, such as those asserted by Cynthia, do not create a private civil remedy or a private cause of action. See Morris v. Homecomings Financial, LLC 2008 WL 3126258, *4 (S.D. Cal. 2008) (violations of criminal statutes do not give rise to a civil

---

[4]When examining the sufficiency of a proposed complaint, the Court considers whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "'plausible on its face.'" Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft, 556 U.S. at 678 (quotation marks omitted)). In general, a plaintiff's complaint need not provide an exhaustive factual account, only a short and plain statement. Fed.R.Civ.P. 8(a). However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 556 U.S. at 678. Legal conclusions couched as facts and "threadbare recitals of the elements of a cause of action" will not suffice. Iqbal, 556 U.S. at 678. See Maddox v. v. Elsevier, Inc., --- F.3d ----, 2013 WL 5630077. *2-3 (1st Cir. Oct. 16, 2013 (NO. 12-1559); Ocasio–Hernandez v. Fortuno–Burset, 640 F.3d 1, 12 (1st Cir. 2011). With respect to claims based on fraud, however, Rule 9(b) contains a heightened pleading standard, stating: "(b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Cynthia has failed to meet this standard with respect to her fraud claims.

cause of action). In <u>Fiorino v. Turner</u>, a case arising out of this District Court, Judge Keeton stated:

> With regard to the alleged violations of 18 U.S.C. ss 241, 242, 371, and 1001, plaintiff has failed to cite, and the court has been unable to locate, any authority which would support implying a civil cause of action for violations of these provisions. To the contrary, the case law indicates that violation of these statutes does not give rise to a civil cause of action. <u>E. g.</u>, <u>Brown v. Duggan</u>, 329 F. Supp. 207 (W.D. Pa.1971) (18 U.S.C. ss 241 and 242); <u>Bryant v. Donnell</u>, 239 F. Supp. 681 (W.D. Tenn.1965) (18 U.S.C. ss 241 and 371). Nor has plaintiff proffered any policy arguments to support implying a civil cause of action for violation of these provisions in favor of a person in plaintiff's position. With respect to the alleged violations of these provisions, then, plaintiff has failed to state a claim upon which relief can be granted.

<u>Fiorino v. Turner</u>, 476 F. Supp. 962, 963 (D. Mass. 1979).

Cynthia's case is no different than <u>Fiorino's</u> and warrants the same conclusion. Thus, her attempts to assert liability based on 18 U.S.C. §§ 241 and 242 are unavailing. While other statutes provide civil remedies, such as 42 U.S.C. § 1983, *et seq.*, Cynthia has not set forth plausible claims for relief under any theory of liability, for the reasons discussed below.

      B.      <u>Failure to Plead Plausible Claims Upon Which Relief May Be Granted</u>

Even under a broad reading, affording her all reasonable inferences, Cynthia's Second Amended Complaint contains only bald allegations and wholly legal conclusions concerning conspiracy to violate civil rights, deceit, fraud, and other wrongful conduct without any underlying factual support for any of these causes of action. This Court cannot discern any *bona fide* federal claims, and need not credit Cynthia's legal conclusions or general allegations as true. See <u>Maddox</u>, 2013 WL 5630077. *3.

With respect to claims against HVMA, her only allegations appears to be that one of its employees filed a 51A report to the DCF and failed to follow through and make corrections to that report. At best, this may present a negligence claim under a *respondeat superior* theory

*(i.e.*, a state law claim), but raises no constitutional or federal law issues.

Next, she asserts no cognizable claims against the Town of Milton itself, nor does she present any cognizable claim against the Milton Police for arresting her. Her only challenges concerning the police actions appear to be that the complaints or restraining orders against her were grounded in false accusations made by others, or that the restraining order was invalid because of the discrepancy of the Quincy District Court judge's first name. Again, none of these allegations have constitutional implications nor involve matters of federal civil rights law.

Similarly, Cynthia asserts claims against the Tucker School and the School Committee, but fails to set forth the basis of the claims. Indeed, it appears that the only dispute was their refusal to address her concerns about her son's education; however, their refusal was based on the fact that legally, Mario had sole custody of the child and did not give them permission to conduct an investigation. As pled, these circumstances also do not set forth any wrongful conduct, nor do they present constitutional concerns or involve violations of federal law.

Finally, as to the claims against DCF, Cynthia's allegations that a 51A report was made against her and reported to DCF, and that DCF refused to correct the records as she wanted. She also claims this led to other false reports. None of these assertions state plausible claims for relief. In any event, as a state governmental agency, the DCF is entitled to Eleventh Amendment sovereign immunity from damages.[5]

Even if Cynthia were to assert claims against the individual DCF social worker who provided reports to the Court or kept records of the § 51A Report, no liability attaches because a

---

[5]To the extent Cynthia seeks an Order effectively amending DCF and/or state court records regarding her mental health status and her abilities as a parent, this Court lacks mandamus jurisdiction to render such an Order. In any event, amendment of state records must be done by the authorized officials of the DCF or the state courts, who are not parties to this suit.

DCF social worker is immune from suit. "Public officials performing discretionary functions 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992) (citations omitted). Further, social workers are immune from suit for activities associated with child custody cases. "[I[t is well established that public officers possess absolute immunity for activities that are intimately associated with the judicial process." Id. at 931 n.12 citing Burns v. Reed, 500 U.S. 478 (1991) and Briscoe v. LaHue, 460 U.S. 325, 334 (1983). "Further, lower courts have provided social workers and other public officials with absolute immunity for actions involving the initiation and prosecution of child custody or dependency proceedings." Id. citing Millspaugh v. County Dep't of Public Welfare, 937 F.2d 1172, 1176 (7th Cir. 1987) (social worker entitled to immunity from suit for failing to furnish information to the court, citing other decisions holding that social workers are entitled to absolute immunity in child custody cases for testimony and other steps taken to present the case for decision by a court) (other citations omitted). While Frazier declined to reach the issue whether the immunity doctrine applied to state law claims of negligence, gross negligence, and defamation (because the state law claims in that case had been waived on appeal), the Court nevertheless stated that under Massachusetts law "communications made in the 'institution or conduct of litigation or in conferences and other communications preliminary to litigation' are subject to an absolute privilege." Id. at 932 citing Sullivan v. Birmingham, 11 Mass. App. Ct. 359 (Mass. App. 1981). Sullivan held that the doctrine of absolute privilege applies to defamatory statements made in the course of or preliminary to litigation. Id. at 361 citing Restatement (Second) of Torts, §§ 586, 587 (1977).

  Here, to the extent that Cynthia raises claims with respect to reports generated for use by

the probate court, the DCF reporters are entitled to immunity from suit. <u>See</u> Mass. Gen. Laws ch. 119, § 51A(g).   Similarly, to the extent that Cynthia's claims the reports were erroneous in connection with her mental health status, the reporters also are immune from suit. <u>See, e.g.</u>, <u>Martin v. Children's Aid Society</u>, 215 Mich. App. 88, 96  (Mich. App. 1996) (holding that Children Aid's Society, who contracted with the DSS to provide services to neglected children, was entitled to absolute immunity, noting the important role that social workers play in court proceedings, and stating "social workers must be allowed to act without fear of intimidating or harassing lawsuits by dissatisfied or angry parents"); <u>Thomas v. St. Vincent & Sarah Fisher Center</u>, 2006 WL 2418974, *11 (E.D. Mich. 2006) (stating that "[w]ithout immunity, social workers may be afraid to remove children from their homes or to make recommendations adverse to parents.  The result of this fear might be an increased risk of harm to children because they would be left in potentially dangerous situations.").

V.      <u>Dismissal is Warranted</u>

In sum, for all the reasons noted above, Cynthia fails to set forth plausible claims against any defendant.  Further, in view of the absence of a *bona fide* federal cause of action, this Court declines to exercise supplemental jurisdiction over any state law claims.  Thus, to the extent there are any state law claims asserted, those will be **DISMISSED** without prejudice.

Finally, given that Cynthia has had <u>three</u> opportunities to present her claims (through her original Motion, her Amended Complaint, and her Second Amended Complaint), this Court finds that no further opportunities need be afforded to her to set forth her plausible claims upon which relief may be granted.  In light of the litigation history, and for the reasons set forth in the prior Memorandum and Order (Docket No. 7) and this Memorandum and Order, this Court finds that any further attempts to amend would be futile.  Although Cynthia claims that she hopes she

will be able to obtain *pro bono* legal services this fall, this Court cannot permit this case to proceed further.

## CONCLUSION

Based on the above, it is hereby Ordered that:

1. Plaintiff's Motion to Amend Complaint (Docket No. 6) is <u>ALLOWED</u>;

2. This action is <u>DISMISSED</u> in its entirety; and

3. To the extent plaintiff asserts state law claims, this Court <u>DECLINES</u> to exercise supplemental jurisdiction, and those claims are <u>DISMISSED</u> without prejudice.

SO ORDERED.

/s/ Joseph L. Tauro
JOSEPH L. TAURO
UNITED STATES DISTRICT JUDGE

DATED: October 22, 2013